UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS – EL PASO DIVISON

| | |
|---|---|
| JTH TAX LLC, d/b/a LIBERTY TAX SERVICE, f/k/a JTH Tax, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>LUZ REYES d/b/a AMERICAN EAGLE TAX SERVICE,<br><br>Defendant. | Case No.: 3:22-cv-394 |

**VERIFIED COMPLAINT**

JTH Tax LLC d/b/a Liberty Tax Service f/k/a JTH Tax, Inc. ("Liberty") alleges for its Verified Complaint against Defendant Luz Reyes ("Reyes") d/b/a American Eagle Tax Service ("American Eagle"), as follows:

**INTRODUCTION**

1. Reyes is a former Liberty and franchisee who operated a Liberty franchise office in El Paso, Texas.

2. Reyes has breached her agreements with Liberty by operating American Eagle, a competing tax preparation business, less than 4 miles from her former Liberty franchise immediately following the termination of her franchise agreements, using Liberty's confidential information and trade secrets to unlawfully compete with Liberty, and defaulting on six-figure debts she owes to Liberty.

3. Plaintiffs seek in this litigation: (1) compensatory damages related to Defendant's breaches of contract; (2) $143,851.52, plus interest, in past-due debt; and (3) attorneys' fees and costs.

1

## PARTIES

4. Liberty is a Delaware limited liability company with its principal place of business at 500 Grapevine Hwy., No. 402, Hurst, TX 76054.

5. Reyes is a resident of Texas, with a last known address of 11577 Meadowbrook Drive, El Paso, TX 79936.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over Reyes because she is a resident of Texas.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) as well as supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims under the federal statutes at issue.

8. Reyes consented to venue in this district under the agreements at issue.

9. Pursuant to the agreements at issue, Virginia law applies to Liberty's claims.

## FACTUAL BACKGROUND

**The Franchise System**

10. Liberty, one of the largest tax franchisors in the United States, is the franchisor of Liberty Tax Service® income tax preparation service centers located throughout the United States, including in Texas, where Reyes operated her Liberty franchise.

11. Liberty owns federally registered Liberty Tax Service® trademarks, service marks, logos, and derivations thereof (collectively, the Marks").

12. The Marks include a service mark bearing an image of the crown of the Statue of Liberty, Registration No. 2,479,692, which was registered on August 21, 2001:



13. The Marks also include a service mark bearing an image of the Statue of Liberty, Registration No. 3,738,741, which was registered on June 19, 2010:



14. Liberty has spent substantial time and money developing, advertising and promoting its distinctive and well-known Marks and Liberty Tax Service® system, which sells income tax preparation and filing services and products to the public under the Marks. Franchisees license Liberty's Marks pursuant to franchise agreements.

15. Liberty promotes its marks throughout the United States, and has spent substantial time and money to maintain and improve its Marks and franchise systems, including, *inter alia*: (1) maintaining and developing service and product quality; (2) developing uniform designs and markings for their services; (3) licensing trademarks and other proprietary information to; (4) developing and maintaining the integrity of its confidential customer information, pricing

3

structures, business/marketing strategies, operational methods and promotional plan; and (4) training franchisees.

16.     As a result of these efforts and expenditures, the Liberty's services have become associated in the minds of consumers with high quality and consistency, provided only by persons following Liberty's approved sales, operating methods and procedures.

17.     Liberty grants licenses to franchisees to use its Marks and participate in its system pursuant to written franchise agreements, which are reasonably and carefully tailored to protect Liberty's valuable confidential information, reputation, goodwill, and other business interests.

18.     Pursuant to the terms of its franchise agreements, Liberty discloses its confidential information and trade secrets, including but not limited to customer names, phone numbers, social security numbers and tax return information, as well as Liberty's operational methods, promotional plans, marketing strategies, pricing structures, business strategies and training materials (collectively, "Confidential Information"), to franchisees through its confidential Operations Manuals, training manuals and training programs.

19.     In turn, Liberty requires that its franchisees agree, that upon expiration of their franchise agreement, they will never use, disclose, or permit the use or disclosure of Liberty's Confidential Information.  Liberty requires that upon termination, the former franchisee will stop using all literature and forms received from Liberty, deliver to Liberty all customer information, and deliver to Liberty all copies of its Operations Manual and any updates thereto.

**The Franchise Agreements**

20.     On or about March 20, 2011, Reyes entered into a franchise agreement with Liberty for a territory located in the El Paso, Texas territory known as TX334 (the "TX334 Franchise Agreement").  A copy of the TX334 Franchise Agreement is attached as **Exhibit A**.

21. On or about December 15, 2016, Reyes entered into a franchise agreement with Liberty for a territory located in the El Paso, Texas territory known as TX342 (the "TX342 Franchise Agreement"). A copy of the TX342 Franchise Agreement is attached as **Exhibit B**. Together, the TX334 Franchise Agreement and TX342 Franchise Agreement are referred to as the "Franchise Agreements."

22. The Franchise Agreements provide that Virginia law governs all claims that in any way relate to or arise out of the agreements or the dealings of the parties. *Id.* at § 17(a).

23. Pursuant to the Franchise Agreements, Liberty provided Reyes with training in franchise operation, marketing, advertising, sales, and business systems. Reyes also received access to Liberty's Confidential Information, including its confidential Operations Manual, which is not available to the public or to anyone who is not part of Liberty's system.

24. In exchange for receiving a license to use Liberty's trademarks and Confidential Information, and to identify as Liberty franchisee, Reyes agreed to, among other things, pay monthly royalties and fees and to abide by in-term and post-term duties to refrain from competing with Liberty and from using Liberty's Confidential Information for any purpose other than to operate a Liberty franchise. Ex. A §§ 4(d), 6(e).

25. Section 9 of the Franchise Agreements sets forth Ryes' post-termination obligations, including, *inter alia*: (a) immediately stop identifying as a Liberty franchisee and using the Marks upon termination of the Franchise Agreements; (b) refrain from harming or disparaging Liberty; (c) refrain from competing with Liberty for two years within twenty-five miles of her former Liberty franchises, and (d) return and never again use all Confidential Information, including all customer files and Liberty's confidential Operations Manual to Liberty.

26. Reyes agreed that the Franchise Agreements' post-termination obligations "are

reasonable, valid and not contrary to the public interest" and "shall survive any termination or expiration of this Agreement."  Ex. A § 10(h).  To that end, Reyes agreed to "waive all defenses to the strict enforcement of Section 10," and further agreed that "Liberty is entitled to a temporary restraining order, preliminary and/or permanent injunction for any breach of duties under any of the non-monetary obligations of Sections 9 and 10."

27. Reyes acknowledged that the Confidential Information was to be used only in connection with the operation of a Liberty franchise, and agreed to refrain from using Liberty's Confidential Information for any purpose other than operating a Liberty franchise.

**The Notes**

28. On or about March 20, 2014, Reyes entered into a promissory note with Liberty in the principal amount of $32,000 ("March 2014 Note").  A copy of the March 2014 Note is attached as **Exhibit C**.

29. On or about May 5, 2016, Reyes entered into a promissory note with Liberty in the principal amount of $39,457 ("2016 Note").  A copy of the 2016 Note is attached as **Exhibit D**.

30. On or about April 12, 2017, Reyes entered into a promissory note with Liberty in the principal amount of $1,850 ("April 2017 Note").  A copy of the April 2017 Note is attached hereto as **Exhibit E**.

31. On or about May 18, 2017, Reyes entered into a promissory note with Liberty in the principal amount of $17,057 ("May 2017 Note").  A copy of the May 2017 Note is attached hereto as **Exhibit F**.

32. On or about February 2, 2018, Reyes entered into a promissory note with Liberty in the principal amount of $1,273 ("2018 Note").  A copy of the 2018 Note is attached as **Exhibit G**.  The March 2014 Note, 2016 Note, April 2017 Note, May 2017 Note and 2018 Note are

collectively referred to as the "Notes."

33. Interest accrues under the Notes at a rate of 12 percent per annum.

34. Reyes agreed to pay all attorneys' fees and other costs incurred by Liberty in connection with collecting on or otherwise enforcing the Notes.

**Termination of the Franchise Agreements**

35. In May 2018, Liberty notified Reyes by way of a Notice to Cure letter that she was in breach of the Franchise Agreements ("Notice to Cure"). A copy of the Notice to Cure is attached hereto as **Exhibit H**.

36. Reyes failed to cure the breaches identified in the Notice to Cure. As such, Liberty terminated the Franchise Agreements effective June 25, 2018. A copy of the termination notice sent to Reyes is attached hereto as **Exhibit I**.

**Defendants' Post-Termination Misappropriation and Breaches of Contract**

37. Notwithstanding her obligation to immediately pay all amounts due and owing upon termination of the Franchise Agreements, Reyes has failed to pay $79,298.65 in past due Note payments and $64,552.87 in unpaid accounts receivables to Liberty.

38. Notwithstanding her obligation to refrain from providing tax preparation services within 25 miles of her former franchise territory, Reyes provided tax preparation services through American Eagle within 4 miles of her former Liberty franchise location in both the 2019 and 2020 tax seasons.

39. Liberty learned of Reyes' unlawful and unfair competition in the fall of 2019, when it reviewed data published by the Internal Revenue Service showing tax returns submitted in the 2019 tax year.

40. The Internal Revenue Service's Authorized E-File Providers database shows that

Reyes is an authorized e-file provider associated with American Eagle:



*See* https://www.irs.gov/efile-index-taxpayer-search?zip=79936&state=All&page=1 (last accessed October 11, 2022).

41. Data maintained and published by the Internal Revenue Service shows that Reyes transmitted 135 tax returns through American Eagle in 2019, and 118 tax returns through American Eagle in 2020.

42. Upon information and belief, Reyes used Liberty's Confidential Information, including client lists and information, to unlawfully and unfairly solicit Liberty's customers and compete with Liberty.

43. In or around January 2020, Liberty discovered that Reyes was using Liberty's Marks in connection with the services of American Eagle.

44. At all relevant times, American Eagle has associated its services with an image of a bald eagle sporting an American Flag design, which is confusingly similar to the Statue of Liberty logo/trademark that has been associated for decades with Liberty's brand and services:



45. A January 2020 Google Image capture of the of the American Eagle storefront shows that Reyes and American Eagle used the same patriotic red, white and blue color scheme that has over the course of several decades become associated with Liberty's brand and services:



46. A January 2021 Google Image capture of the interior of the American Eagle office shows that Reyes and American Eagle were still affiliating with Liberty, and using Liberty's Marks to tout its services, at that time:



9

47.     A May 2022 Google Image capture of the of the American Eagle storefront confirms Reyes' and American Eagle's continued use of Liberty's patriotic red, white and blue color scheme:



48.     The service marks associated with American Eagle are confusingly similar with Liberty's protected trademarks.

49.     Upon information and belief, Reyes' use of confusingly similar marks and Liberty's Confidential Information and operation of American Eagle mere miles from her former Liberty franchise office has caused and will continue to cause confusion in the minds of consumers between the services of Liberty and American Eagle, as well as resulting irreparable harm to Liberty's reputation and goodwill.

**COUNT I**
*Breach of the Franchise Agreements and Notes (Monetary Claim)*

50.     Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

51.     The Franchise Agreements and Notes are valid and enforceable.

52. Liberty has performed every obligation and condition required under the Franchise Agreements and the Notes.

53. Reyes was to immediately take the following actions upon termination of the Franchise Agreements: (a) pay all amounts due and owing to Liberty; (b) never hold itself out as a current or former Liberty franchisee; (c) cease use of the Marks; (d) take no action that could harm or prejudice Liberty, and (e) forever refrain from using or disclosing Liberty's Confidential Information.

54. Reyes has materially breached the Franchise Agreements and Notes by at least:

   a. operating American Eagle less than 4 miles from her former Liberty franchise location within the non-compete period;

   b. holding herself out as a Liberty franchisee following termination of the Franchise Agreements;

   c. using the Marks in connection with the services of American Eagle following termination of the Franchise Agreements;

   d. using Liberty's Confidential Information to operate American Eagle, solicit Liberty's clients and gain a competitive advantage;

   e. failing to pay past due accounts receivables in the amount of $64,552.87 to Liberty; and

   f. failing to pay $79,298.65 due and owing to Liberty under the Notes.

55. The foregoing breaches have harmed Liberty in an amount to proven at trial.

## COUNT II
### *Violation of the Defend Trade Secrets Act, 15 U.S.C. § 1114(1)*

56. Liberty repeats and re-alleges the foregoing paragraphs as if fully set forth herein.

57. The DTSA provides a private civil action for the misappropriation of trade secrets that are related to a product or service used in interstate or foreign commerce

58. Liberty owns numerous trade secrets, including but not limited to, its confidential Operations Manual and Confidential Information, which includes but is not limited to customer

11

financial records and information, training manuals, marketing strategies, and customer lists ("Trade Secrets").

59. Liberty's trade secrets implicate interstate commerce. The Trade Secrets are directly related to Liberty's services, which involve preparing tax returns in a particular location (in this case, Texas) and transmitting those returns to the IRS in Virginia. Moreover, Liberty has franchise locations throughout the United States and each Liberty franchisee has access to and use of Liberty's Confidential Information and trade secrets, which provides franchisees with proprietary information on operating their businesses and providing professional tax services to customers in interstate commerce.

60. Liberty has carefully developed and refined its Trade Secrets, which are key components of its continued success.

61. Liberty's Trade Secrets provide independent economic value as Liberty uses the Confidential Information to procure and maintain customers, through competitive pricing and confidential and proprietary processes and procedures.

62. Liberty's Trade Secrets, which have been developed and refined over several decades by Liberty, are not generally known and are not readily ascertainable by proper means.

63. Liberty has taken extensive measures to preserve and protect its Trade Secrets for the purpose of maintaining its competitive advantage, and only discloses such information to officers, employees and franchisees who have promised to keep the Confidential Information strictly confidential to only use it in connection with a Liberty franchise.

64. Liberty takes steps to prevent disclosure of its Trade Secrets, including, but not limited to mandating those with access sign a non-disclosure agreement, and storing such information on password protected computers and servers to limit disclosure to only authorized

persons and/or entities.

65. Upon information and belief, Reyes has used, and will continue to use, the Trade Secrets without authorization to operate American Eagle.

66. As a direct and proximate result of Reyes' willful, improper, and unlawful disclosure and/or use of Liberty's Trade Secrets, Liberty has suffered and will continue to suffer immediate and irreparable harm.

67. Pursuant to 18 U.S.C. § 1836(b)(3)(B), Liberty is entitled to recover damages for its actual losses, and to prevent Defendants' unjust enrichment.

68. Pursuant to 18 U.S.C. § 1836(b)(3)(A), the Court should enjoin Reyes' continued use and misappropriation of Plaintiff's trade secrets, and require Reyes to return same to Liberty.

69. Reyes' misappropriation of Liberty's Trade Secrets is willful and malicious, thus warranting an award of exemplary damages under 18 U.S.C. § 1836(b)(3)(C), and an award of reasonable attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## COUNT III
### *Federal Trademark Infringement (15 U.S.C. § 1114(1)*

70. Liberty repeats and re-alleges the foregoing allegations as if fully set forth herein.

71. Liberty owns the Marks.

72. American Eagle uses a red/white/blue color scheme and patriotic themes to identify its tax preparation services, which are confusingly similar to Liberty's Marks.



73. Reyes has also used Liberty's Marks in connection with the services of American

13

Eagle.

74.  Liberty did not consent to Reyes' use of the Marks or confusingly similar marks for the sale of its identical services, and Reyes' use of the same was designed to cause confusion, cause mistake, and to deceive the public.

75.  American Eagle operates mere miles from Reyes' former Liberty franchise.

76.  The services of American Eagle and Liberty are identical.

77.  As such Reyes infringed Liberty's Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

78.  Through her unlawful operation of American Eagle, Reyes has profited and Liberty has been damaged.

79.  Reyes' unlawful actions were done knowingly and intentionally to cause confusion, cause mistake, and to deceive the public.

80.  Accordingly, Liberty has suffered and continues to suffer irreparable injury and has incurred and will continue to incur monetary damages in an amount to be determine at trial.

## COUNT FIVE
*False Designation of Origin (15 U.S.C. § 1125(a))*

81.  Liberty repeats and re-alleges the foregoing allegations as if fully set forth herein.

82.  Liberty owns the Marks.

83.  Reyes is using the Marks and marks that are confusingly similar to Liberty's Marks to identify her competing tax preparation business, American Eagle.

84.  Reyes' use of the Marks, and marks that are confusingly similar to Marks (as set forth above), is likely to cause confusion, cause mistake, and/or deceive as to Reyes' and American Eagle's affiliation, connection, or association with Liberty, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities.

85. The unlawful conduct described herein constitutes false designation of origin and misrepresentation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

86. As a direct and proximate result of Reyes' wrongful conduct, Liberty has suffered damage to the value of the Marks and to customer goodwill.

87. Reyes' acts have been and are being done knowingly and intentionally to cause confusion, to cause mistake, and/or to deceive.

88. Liberty will continue to suffer irreparable injury unless Reyes' wrongful conduct is enjoined and there is no adequate remedy at law.

## COUNT SIX
*Trademark Dilution (15 U.S.C. § 1125(c))*

89. Liberty repeats and re-alleges the foregoing allegations as if fully set forth herein.

90. Liberty owns the Marks.

91. The Marks are famous and distinctive under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

92. Liberty uses the Marks to identify it and its franchisee's tax preparation services in interstate commerce.

93. Reyes has used and/or is using the Marks and marks that are confusingly similar to the Marks to identify her competing tax preparation business, American Eagle.

94. Reyes began using the Marks and marks that are confusingly similar to the Marks after the Marks became famous and distinctive.

95. Reyes' actions and conduct, as set forth above, constitute dilution of the famous Marks under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

96. As a direct and proximate result of Reyes; wrongful conduct, Liberty has suffered and will continue to suffer irreparable damage to reputation and goodwill for which it has no

adequate remedy at law.

97. Liberty is entitled to injunctive relief under 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c)(1).

## COUNT SEVEN
### *Unfair Competition*

98. Liberty repeats and re-alleges the foregoing allegations as if fully set forth herein.

99. Liberty owns the Marks.

100. Reyes is using the Marks and marks that are confusingly similar to the Marks to identify her competing tax preparation service, American Eagle.

101. Reyes and American Eagle have engaged and, upon information and belief, will continue to engage in illegally using and displaying the Marks and marks that are confusingly similar to the Marks in violation of the Lanham Act.

102. Reyes has unfairly profited from using the Marks and marks that are confusingly similar to the Marks to confuse, mislead, and/or deceive consumers into obtaining services from her competing business.

103. Through her actions, Reyes intentionally deceived, and upon information and belief, continues to intentionally deceive, Liberty's customers for her business gain.

104. As a direct and proximate result of Reyes' actions, Liberty has suffered and will continue to suffer irreparable injury and monetary damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Liberty prays for judgment against Reyes as follows:

1. For an order requiring Reyes to immediately cease using Liberty's Marks and marks that are confusingly similar to the Marks.

2. For an Order requiring Reyes to immediately cease using and to return all

Confidential Information and Trade Secrets to Liberty;

3. For compensatory damages related to Reyes' breaches of the Franchise Agreements and Notes;

4. For statutory damages stemming from Reyes' violation of the DTSA and Lanham 3:22-cv-Act;

5. For disgorgement of all profits Reyes has made through her unlawful competition, plus interest;

6. For a monetary award against Ryes for Liberty's attorneys' fees and costs, in an amount to be proven at trial;

7. For pre- and post-judgment interest; and

8. For such other relief as the Court deems just and appropriate.

Date:  October 31, 2022  **GORDON REES SCULLY MANSUKHANI LLP**
*Counsel for Plaintiff*

*/s/ Cristina Guerrero*
Cristina Guerrero
Texas Bar No. 24058860
TransWestern Tower
1900 West Loop South, Suite 1000
Houston, TX 77027
P: 713-228-7019
E: cguerrero@grsm.com